OPINION OF THE COURT
Michael D. Stallman, J.
In this commercial nonpayment proceeding, petitioner and respondent each have moved for summary judgment. The parties agree that there is no triable material issue, and that the court must resolve a novel issue of law: May a landlord recover rent from a commercial tenant located in a multiple dwelling upon expiration of the temporary certificate of occupancy for the commercial space, when the landlord had ap *573 plied for a new certificate, but before the Buildings Department issued one.
FACTS
Petitioner commenced this summary proceeding based upon respondent’s failure to pay rent since June 1992. Respondent asserts that it had no obligation to pay rent during the period when there was no certificate of occupancy in place for the demised premises. It is undisputed that a final certificate of occupancy for the residential units of the building had been in effect during the relevant period.
On or about September 1, 1989, the parties entered into a lease agreement for the subject premises, Store No. 3 at 146 Elizabeth Street. Respondent subsequently took possession and has been operating a business at the premises to date.
The Buildings Department issued a certificate of occupancy for the subject building on April 2, 1992: a final certificate for the residential space and a temporary certificate for the commercial space.
On June 30, 1992, two days before the temporary certificate of occupancy for the commercial premises was due to expire, petitioner filed an application with the Buildings Department for another temporary certificate. Respondent does not claim that this application was untimely or improperly made. The temporary certificate of occupancy expired by its terms on July 2, 1992. Respondent has not paid rent for the period July 1992 to date.
Petitioner served a three-day rent demand dated August 26, 1992; the notice of petition and petition were served thereafter.
The Buildings Department issued a new temporary certificate of occupancy for the commercial space on February 16, 1993, approximately five months after the commencement of the within proceeding but before final submission of the parties’ motions for summary judgment.
ANALYSIS
Multiple Dwelling Law § 302 provides in pertinent part:
"l.a. If any dwelling or structure be occupied in whole or in part for human habitation in violation of section three hundred one * * *
"b. No rent shall be recovered by the owner of such premises *574 for said period, and no action or special proceeding shall be maintained therefor, or for possession of said premises for nonpayment of such rent.” (Emphasis supplied.)
Section 301 (1), referred to above in paragraph (a), requires the issuance of a certificate of occupancy before a multiple dwelling may be "occupied in whole or in part.”
During the period at issue, it is undisputed that a final certificate of occupancy was in effect for the residential space. Nevertheless, the statute contains no words of limitation restricting its application to residential premises, or limiting the availability of this defense to residential tenants. (See, Ying Lung Corp. v Medrano, 123 Misc 2d 1074 [statutory language necessarily implies that commercial tenants may assert defense provided in Multiple Dwelling Law § 302 (1) (b)].) The statute barred the landlord from collecting rent from respondent while there was no certificate of occupancy in effect, to wit, from July 2, 1992 through February 16, 1993. Accordingly, the petitioner is barred from maintaining this proceeding, or any action for rent or possession based on the nonpayment of rent during that period. (See, Hakim v Von Walstrom, NYLJ, July 29, 1992, at 21, col 5 [App Term, 1st Dept].)
Petitioner claims that it should be entitled to maintain this proceeding and collect rent because it applied for a new certificate of occupancy on June 30, 1992, two days before expiration of the prior certificate. This argument, while superficially appealing, is without merit. Multiple Dwelling Law § 302 contains no exemption, toll, or relation back provision for an owner who files for a certificate of occupancy that is subsequently issued months later.
The Legislature has allocated to the owner the responsibility of applying for, and actually obtaining, a new certificate if a prior certificate is only temporary. Buildings Department approval is neither ministerial nor guaranteed. The review process is intended to assure that the occupancy and space are legal and safe. There is an inherent risk that the application might not be granted, or, as happened here, that the application might not be granted before the expiration of the prior certificate. Indeed, it was not unreasonable for petitioner to have anticipated that its new application would not have been acted on within the two days remaining on the prior certificate.
The Building Code provides: "§ 27-222 Issuance of certificates *575 of occupancy, (a) All applications for certificates of occupancy and accompanying papers shall be examined promptly after their submission. If the building is entitled to the certificate of occupancy applied for, the application shall be approved and the certificate of occupancy issued by the commissioner within ten calendar days after submission of the application. Otherwise, the application shall be rejected and written notice of rejection, stating the grounds of rejection, shall be given to the applicant within ten calendar days of the submission of the application. Wherever an application has been rejected and proof is thereafter submitted establishing that the grounds of rejection have been met and that the building is entitled to the certificate of occupancy applied for, the application shall be approved and the certificate of occupancy issued within ten calendar days after submission of such proof.” (Administrative Code of City of NY § 27-222.)
Whether the City or petitioner unjustifiably failed to comply with the above-referenced procedure, and why a new certificate was not issued until almost eight months after the application was submitted, are questions not properly before this court. However, it is clear that the issuance of a new certificate of occupancy does not relate back to the date of the application, even when it was filed before the expiration of the existing certificate. Hypothetically, bureaucratic delay in the issuance of a certificate of occupancy could be used for a corrupt or discriminatory purpose; however, there is nothing before the court to indicate that such consideration is relevant here. Indeed, petitioner’s last minute filing did not permit even the statutory 10-day period for Buildings Department review.
The result — the forfeiture of nearly eight months’ rent— does seem disproportionately harsh under the unusual circumstances presented here. Respondent was continuously in possession, doing business by using the space for its benefit, apparently unimpeded by the lapsed certificate of occupancy. Nevertheless, the language of Multiple Dwelling Law § 302 (1) (b) is clear and unambiguous, obviating the need for judicial interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76; see, Mathurin v Jackson, NYLJ, Dec. 12, 1990, at 23, col 2 [Civ Ct, NY County] [court should not question wisdom of the Legislature, particularly when its intent is unambiguously stated in the statute].) Indeed, a close reading of the statute *576 indicates that it is not limited to penalizing the rental of legally unsuitable space for residential occupancy. Rather, when Multiple Dwelling Law §§ 301 and 302 are read in pari materia, it is evident the statutory scheme was intended even more broadly: By applying to all space in multiple dwellings— residential and nonresidential — the statute deters an owner from renting unsafe or inappropriate space and from permitting illegal or improper uses. In order to do so, it requires that the owner seek and obtain prior approval via the certificate of occupancy process.
Each application is distinct; the statutes do not speak in terms of renewal. (See, Multiple Dwelling Law §§ 301, 302; Administrative Code § 27-222.) Neither do they allude to the lapse at issue here. The statutory scheme, by implication, accordingly allocates to the owner the risk of lapse.
Moreover, this is not a case where the expired certificate of occupancy never related to the tenant’s space, which had been covered continuously by an extant certificate. (Cf., 50 E. 78th Corp. v Jire, NYLJ, Dec. 2, 1991, at 25, cols 1, 3 [residential respondent could not assert Multiple Dwelling Law § 302 defense based on expiration of certificate for commercial space which "neither adversely affected the structural integrity of the building nor rendered (respondent’s) residential occupancy unlawful”].) Here, it was the respondent’s space which lacked the certificate of occupancy during the period at issue, while other space in the building was properly covered. Thus, it cannot be said that this respondent lacks standing, or was legally unaffected.
The rent forfeiture required here would be averted by an amendment providing that a new temporary certificate of occupancy shall be deemed effective, for purposes of Multiple Dwelling Law §§ 301 and 302, nunc pro tune as of expiration of the prior certificate, provided that the new application was timely made before expiration of the prior certificate.
Such amendment is properly for the Legislature to consider. This court lacks the authority to rewrite the statute in its own image on an ad hoc basis.
CONCLUSION
Since the landlord is barred from collecting rent from respondent for the period when there was no certificate of *577 occupancy for the leased premises, July 2, 1992 through February 16, 1993, respondent’s motion for summary judgment is granted, petitioner’s cross motion for summary judgment is denied, and this proceeding is dismissed. It is therefore unnecessary to consider the other grounds raised.